IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| TOBY KRISTOPHER PAYNE, | § | |
| Institutional ID No. 01720023 | § | |
| SID No. 08361639 | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 1:18-CV-00208-BU |
| v. | § | |
| | § | |
| BRIAN COLLIER-TDCJ EXECUTIVE | § | |
| DIRECTOR, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER OF DISMISSAL

Plaintiff Toby Kristopher Payne, an inmate incarcerated by the Texas Department of Criminal Justice and proceeding pro se, filed this action under 42 U.S.C. § 1983 on December 19, 2018. Dkt. No. 1. The Court granted Payne leave to proceed in forma pauperis, which subjects his complaint to the Court's judicial screening measures under 28 U.S.C. § 1915(e)(2). Dkt. No. 7. Because Payne brings this lawsuit against government officials, his Complaint is also subject to screening under 28 U.S.C. § 1915A.

Under 28 U.S.C. § 636(b) and an order of transfer, this civil action was transferred to a United States magistrate judge. Dkt. No. 8. Payne later consented to the exercise of jurisdiction by a magistrate judge. Dkt. No. 11. Pursuant to Special Order 3-326, this civil action was reassigned to the undersigned United States magistrate judge. Dkt. No. 54. The Court ordered Payne to complete a Magistrate Judge's Questionnaire so that the Court could further develop the factual allegations contained in Payne's Complaint. Dkt. No. 78.

Payne filed an untimely response that failed to answer any of the questions asked by the Court through the Questionnaire. Dkt. No. 81. Instead, Payne's response recounts his recent mental health history, repeats some of his previous allegations, and again asks the Court to appoint counsel for him. *Id.*

Based on the Court's review of Payne's Complaint, his purported questionnaire response, the authenticated records of the TDCJ, and applicable law, the Court concludes that Payne's Complaint should be dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii) and 1915A(b)(1) as frivolous and for failure to state a claim on which relief may be granted.

## I. BACKGROUND

A. <u>Factual Background</u>

After he attempted suicide in 2014 while in TDCJ custody at the Neal Unit, Payne was placed on suicide watch and subsequently transferred to the psychiatric ward at the Montford Unit, where Payne was "admitted as an inpatient." Dkt. No. 1 at 9. Payne remained at Montford for approximately one year. *Id.* While at Montford, it became apparent to Payne that Montford inpatient psychiatric inmates did not have access to "Offender Telephone System" phones, which Payne claims "were available to mental health patients at the psychiatric units Jester 4 and Skyview." *Id.* Payne filed inmate grievances, a complaint with the Office for Civil Rights at the United States Department of Justice, and ultimately a federal lawsuit in this Court concerning limited inmate access to the Offender Telephone System. *Id.*

At the conclusion of Payne's time at Montford, a psychiatrist at Montford suggested that Payne "voluntarily admit [himself] into a psychiatric treatment program at the Clements Unit named Chronic Mentally Ill ("CMI")," a suggestion to which Payne admits he agreed. *Id*. at 10. Despite voluntarily admitting himself to the CMI program at the Clements Unit, Payne claims that he "quickly learned that [he] had been duped into this program because officers and mental health staff explained to [him] that [he] was being 'treated' as if [he] were an ad-seg offender," which Payne states "felt a lot like solitary confinement." *Id*. Payne complains that he was confined in his cell during the CMI program "for virtually 24 hours a day for approximately 20 months." *Id*. During this time, Payne alleges that he experienced "numerous" violations of his civil rights, though he does not identify the nature of these violations in his Complaint. *Id*.

At some point in 2017, Payne was informed "to [his] absolute surprise" that he was being involuntarily discharged from the CMI program and transferred out of the Clements Unit. *Id*. Payne claims that his verbal and written objections to CMI staff about his discharge were "ignored," and he was ultimately discharged and transferred to the Robertson Unit. According to Payne, his discharge from the CMI program "was done as a direct result to my complaint to the U.S. Dep't of Justice and all the grievances that [he] filed while there because [he] admonished officials in those grievances that they were under investigation by the U.S.D.O.J. and that [he] planned to file a federal lawsuit." *Id*. at 10–11. Payne was subsequently housed in general population at the Robertson Unit. *Id*. at 11.

During his incarceration at the Robertson Unit, Payne claims he received several disciplinary actions, "virtually all" of which he contends "can be proven to be frivolous

and/or bogus in nature" and made in retaliation for his filing of grievances and lawsuits *Id*. Payne states that he "fully believes that it is a policy or custom of [the Robertson] unit's administration, acting on directives from officials in Huntsville and Austin, to purposely and systematically oppress the inmate population with a quota system for disciplinary actions." *Id*. at 12. Thus, Payne alleges that "[t]his policy or custom results in [him] being corralled in the direction of the defendants who can covertly retaliate against [him]." *Id*. He broadly alleges that "these covert retaliatory efforts are directly related to" Payne's numerous lawsuits filed in this Court and his "complaint with the U.S.D.O.J." *Id*.

B. Procedural Background

This civil action suffers from an unnecessarily tortured procedural history. This is the seventh civil rights action filed by Payne in this Court since 2017.[1]

Payne sues twenty-six TDCJ employees: TDCJ Executive Director Brian Collier, FNU LNU Regional Director, Lorie Davis, Robertson Warden Steven Sperry, Assistant Warden Monte Griffin, Assistant Warden Jimmy Webb, Assistant Warden Cano, Major Almanza, Major Boyer, Captain Alan Merchant, Officer M. Gonzales, Officer N. Rangel, Lieutenant John Johnson, Step 2 Signature Authority B. Barrett, Officer P. Orrell, Officer M. Vasquez, Psychiatrist Jessie Singh, Officer John Garcia, Mental Health Manager James Sutterfield, Major Jason Hardegree, Psychiatrist John Garcia, Psychiatrist FNU Nguyen, Assistant Warden Damon Andrews, Assistant Warden Darrell Nash, Senior Warden Kevin

---

[1] *See, e.g.*, *Payne v. Sutterfield, et al.*, 2:17-CV-00211-Z-BR (dismissed on 09/02/20); *Payne v. Sperry, et al.*, 1:18-CV-00027-BL (dismissed on 05/01/19); *Payne v. Davis*, No. 1:18-CV-00048-C (dismissed on 04/06/20); *Payne v. Appleton, et al.*, No. 1:18-CV-00063-BL (dismissed on May 2, 2019); *Payne v. Sutterfield, et al.*, No. 2:18-CV-00084-Z-BR (dismissed on 07/27/21); and *Payne v. Almanza, et al.*, No. 1:18-CV-00175-BU (dismissed on 05/01/2019).

Foley, and P.A. Toni Deer (collectively "26 TDCJ Defendants").[2] Dkt. No. 1. He also sues Texas Governor Gregg Abbott and Texas Attorney General Ken Paxton. Dkt. No. 9.

Since the filing of this lawsuit in late 2018, Payne has filed thirty-one (31) motions, notices, or other filings seeking to amend or supplement the claims in his Complaint.[3] The vast majority of these filings were made without leave of Court and in contravention of the Federal Rules of Civil Procedure and the Local Civil Rules of the Northern District of Texas. On May 24, 2019, the previously assigned magistrate judge ordered Payne to file a comprehensive complaint, including all necessary factual allegations, all information identifying which defendants are alleged to have committed which violations, and all relief sought. Dkt. No. 42. Payne, regrettably, failed to comply with this order and continued filing piecemeal amendments or supplements to his Complaint.

The Court ultimately ordered Payne to respond to a Magistrate Judge's Questionnaire by answering each question so that the Court could further develop the allegations in Payne's Complaint. Dkt. No. 78. This Questionnaire asked Payne to identify the acts or omissions of each Defendant and to clearly state the factual basis for Payne's claims. *Id*. Payne did not timely file a response. The Court then entered a Show Cause Order ordering Payne to show cause why his case should not be dismissed for his failure

---

[2] Several of the Defendants identified by Payne are employees of the Clements Unit, and therefore not properly before the Abilene Division of this Court. However, in the interest of judicial economy and in light of Payne's history of litigiousness, the Court retains Payne's claims against the Clements Unit Defendants. The Court understands that Payne asserts claims against both Robertson and Clements Unit Defendants. *See* Dkt. No. 1.

[3] *See* Dkt. Nos. 9, 10, 12, 17, 18, 19, 26, 28, 29, 30, 31, 32, 34, 35, 36, 37, 38, 39, 40, 41, 43, 51, 52, 55, 60, 69, 71, 73, 74, 75, and 77.

to comply with the Court's order to answer the Questionnaire. Dkt. No. 80. Payne responded to the Show Cause Order by submitting a letter to the Court. Dkt. No. 81.

In this letter, Payne does not answer any of the questions in the Questionnaire. Instead, he continues advancing general, conclusory allegations in a narrative format, and in some cases, attempts to further supplement the claims in his Complaint by raising additional factual allegations. Additionally, through this letter Payne requests the Court to appoint him counsel[4] and states the following:

> I desperately need counsel to help me with this case. Maybe suing the governor, attorney general, and other high level officials was too much. I was probably very manic at the time. My mental illness is only getting worse and worse. And they keep on putting me on heavier and heavier doses of antidepressants and antipsychotics. These only lesson my ability to think clearly and focus and concentrate.
>
> . . .
>
> My thinking ability has gotten worse and worse since I first filed this complaint. I beg the court to emphasize with me. I need help with this complaint. I cannot do this on my own. I think the only constitutional violation is free speech.
>
> I need legal help[.] So much has happened to me at the hands of staff I cannot organize it all in my head.

Dkt. No. 81 at 5–6.

Payne's letter, along with his various filings, illustrate the difficulty of managing the mental health of incarcerated persons and the difficulty faced by the courts in screening their legal claims. While Payne's letter could plausibly be construed as abandoning certain claims, removing several Defendants, and evincing Payne's intention to only pursue his First Amendment claims, the Court declines to construe Payne's letter as abandoning any

---

[4] The Court address Payne's request for the appointment of counsel in Section V of this Order.

of his claims against the Defendants. Instead, the Court liberally construes and considers all of the allegations pleaded in Payne's original Complaint.

## II.   PRELIMINARY SCREENING

A court must dismiss a complaint filed in forma pauperis by a prisoner against a government entity or employee if the court determines the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) (2016); *see also* § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding in forma pauperis). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacks an arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly lacks an arguable basis in law if it contains indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (noting responses given to a questionnaire are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may dismiss prisoners' in forma pauperis claims as frivolous based on "medical and other prison records if they are adequately identified and authenticated" (internal quotations omitted)).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

### III.   DISCUSSION AND ANALYSIS

Payne alleges that the 26 TDCJ Defendants, Governor Abbott, and Attorney General Paxton violated his constitutional rights under the First, Fifth, Eighth, and Fourteenth Amendments, as well as the Privileges and Immunities Clause of Article IV of The United States Constitution. Dkt. No. 1 at 8. Additionally, Payne asserts that "these violations also inherently violated [his] statutory civil rights under the Americans with Disabilities Act ("ADA"), Rehabilitation Act ("RA"), and, at certain times, the Religious Land Use and Institutionalized Persons Act ("RLUIPA")." *Id.* at 8–9.

The Court considers each claim below, and finds that Payne's claims must be dismissed as frivolous and/or for failure to state a claim.

A. <u>Payne has failed to allege personal involvement of any of the Defendants.</u>

Payne seeks relief under 42 U.S.C. § 1983, which provides a federal cause of action in redressing the "deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and the laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). Thus, in order to establish liability under § 1983, a

plaintiff must prove (1) that he was deprived of a right that is constitutional or otherwise secured under the laws of the United States, and (2) that the defendant deprived the plaintiff of that right while acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

In order to state a claim, "a plaintiff bringing a section 1983 action must specify the personal involvement of each defendant." *Murphy Kellar*, 950 F.2d 290, 292 (5th Cir. 1992). "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983); *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005). Government officials may not be held vicariously liable under § 1983 for the acts of their subordinates. *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). "Officials acting in a supervisory role may only be held liable under § 1983 if they either (1) affirmatively participate in acts that cause a constitutional deprivation or (2) implement unconstitutional policies that causally result in the plaintiff's injury." *Thompson v. Johnson*, 348 F. App'x 919, 921 (5th Cir. 2009) (citing *Mouille v. Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992)). Despite naming nearly thirty defendants to this action, Payne has not provided the Court with any specific facts showing individual personal involvement on the part of any of the named Defendants.

As noted, the Court's Questionnaire ordered Payne to respond by specifically stating the extent of each defendant's personal involvement in allegedly violating Payne's constitutional rights. Payne's untimely letter did not answer the questions asked and otherwise fails to shed light on his claims, on any of the Defendants' personal involvement in allegedly violating his rights, or on any alleged implementation by Defendants of unconstitutional policies or customs.

Because "[p]ersonal involvement is an essential element of a civil rights cause of action," *Thompson*, 709 F.2d at 382, Payne's claims may be dismissed on this basis alone. However, despite Payne's failure to allege personal involvement, the Court examines each of Payne's claims below.

B.  Payne's Constitutional Claims

In his Complaint, Payne alleges that each Defendant retaliated against him for "using the court system" and declares that this "is a claim that [his] right to be free from retaliation for using the court system was violated[.]" Dkt. No. 1 at 8. Payne claims the Defendant's alleged retaliatory conduct violated his First, Fifth, Eighth, and Fourteenth Amendment rights.

1.  Payne has pleaded insufficient facts to support a claim for retaliation.

Payne identifies two actions that form the basis for the alleged retaliation against him: (1) his discharge from the CMI program at the Clements Unit and (2) disciplinary actions received while at the Robertson Unit. *Id*. at 10–12.

"Under the First Amendment, a prison official may not harass or retaliate against an inmate 'for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct.'" *DeMarco v. Davis*, 914 F.3d 383, 388 (5th Cir. 2019) (quoting *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995)). This constitutional protection is limited to the filing of non-frivolous complaints involving the assertion of legitimate constitutional rights. *Johnson v. Rodriguez*, 110 F.3d 299, 311 (5th Cir. 1997).

To state a claim for retaliation under § 1983, a plaintiff must show: "(1) the existence of a specific constitutional right; (2) the defendant's intent to retaliate for the exercise of

that right; (3) a retaliatory adverse act; and (4) causation." *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 863 (5th Cir. 2004); *McFaul v. Valenzuela*, 684 F.3d 564, 578 (5th Cir. 2012). Federal courts are not qualified to second-guess every decision made by prison officials in the exercise of their professional judgment. *Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979). The Fifth Circuit has recognized that "[t]he prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Woods*, 60 F.3d at 1166 (citing *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)).

Thus, prisoners' claims of retaliation should be "carefully scrutinized by the courts." *Adeleke v. Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010) (citing *Woods*, 60 F.3d at 1166). Conclusory allegations, including a prisoner's personal belief that he is the victim of retaliation, are insufficient to support a claim for retaliation. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (citing *Johnson*, 110 F.3d at 310). Instead, "[t]he inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." *Haddix v. Kerss*, 203 F. App'x 551, 554 (5th Cir. 2006) (quoting *Woods*, 60 F.3d at 1166). As explained below, Payne fails to state a claim for retaliation regarding either (1) his discharge from the CMI program or (2) the disciplinary cases Payne received at the Robertson Unit.

i.   *Discharge and Transfer From CMI Program*

Payne broadly alleges that his discharge from the CMI program and transfer to the Robertson Unit "was done as a direct result to [his] complaint to the U.S. Dep't of Justice

and all the grievances filed [at CMI] because [he] admonished officials in those grievances that they were under investigation by the U.S.D.O.J." and because he informed prison officials "that [he] planned to file a federal lawsuit." Dkt. No. 1 at 10–11.

The filing of a prison grievance is a constitutionally protected activity, and a prison official may not retaliate against an inmate in engaging in such protected activity. *Woods*, 60 F.3d at 1164; *Gibbs v. King*, 779 F.2d 1040, 1046 (5th Cir. 1986) ("[P]rison officials [are] prohibited from 'retaliation against inmates who complain of prison conditions or official misconduct.'" (quoting *Ruiz v. Estelle*, 679 F.2d 1115, 1154 (5th Cir. 1982))). Thus, the Court assumes without deciding that Payne has satisfied the first element of a claim for retaliation, i.e., that he engaged in activity protected by the First Amendment through the filing of his grievances and federal lawsuits. But, other than this first element, Payne does not and cannot satisfy the remaining elements required to state a retaliation claim.

Despite Payne's claim that his discharge from the CMI program was a "direct result" of his grievances, complaints, and his stated intent to file a federal lawsuit, he provides nothing other than conclusory allegations coupled with his subjective beliefs that the Defendants initiated his transfer in an effort to retaliate against him. This will not suffice to establish a retaliation claim. *Jones*, 188 F.3d at 325; *Walker v. Clark*, 2:17-CV-221-D, 2019 WL 5685340, at *8 (N.D. Tex. Feb. 25, 2019) (dismissing plaintiff's retaliation claim brought under the First Amendment when he stated "nothing more than conclusory allegations").

Nor does Payne allege sufficient facts to support the existence of causation, i.e., that but for Payne's protected First Amendment activity, he would not have been discharged

from the CMI program and transferred to another prison unit. Causation requires proof that but for the retaliatory motive, the adverse action would not have occurred. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). Payne fails to even allege causation and his allegations are insufficient to support such an inference.

Moreover, Payne's discharge from the CMI program and transfer to the Robertson Unit cannot be considered a "retaliatory adverse act" because "[a] prisoner has no constitutionally protected interest in a particular facility." *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996). A criminal conviction under the laws of the State "sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons . . . [t]hat life in one prison is much more disagreeable than another does not in itself signify that [a liberty interest] is implicated when a prisoner is transferred to the institution with the more severe rules." *Meachum v. Fano*, 427 U.S. 215, 224–25 (1976). Payne may have found the conditions at the Robertson Unit to be harsher than the conditions at the Clements Unit, particularly in the CMI program, but this does not state a claim for retaliation or otherwise implicate a constitutionally protected interest. Payne has not shown that his transfer from the CMI program was in retaliation for filing grievances or lawsuits.[5]

Payne has wholly failed to "produce direct evidence of [retaliatory] motivation" or "allege a chronology of events from which retaliation may plausibly be inferred." *Jones*, 188 F.3d at 325. Therefore, Payne's allegation of retaliation as it relates to his discharge

---

[5] The Court observes that Payne has been transferred from the Robertson Unit back to the CMI program at the Clements Unit at least once since the filing of this lawsuit. *See* Dkt. No. 56 (notice of change of address to the TDCJ Clements Unit dated December 9, 2019); Dkt. No. 81 at 1 ("On December 3rd, 2019, I was transferred from Robertson Unit general population to the Chronic Mentally Ill CMI program on Clements Unit.").

from the CMI program at the Clements Unit is dismissed with prejudice as frivolous and for failure to state a claim. *Black v. Graham*, No. 2:16-CV-207, 2019 WL 1573793, at *3 (N.D. Tex. Mar. 4, 2019) (dismissing as frivolous an inmate's retaliation claim when he failed to show that the transfer to a different unit was an adverse act, that the alleged adverse act was caused by the filing of an inmate grievance, or the result of a retaliatory motive).

ii.   *Disciplinary Actions*

Payne also alleges that he suffered retaliation at the Robertson Unit because he "received more disciplinary actions during [his] time at the Robertson Unit (since July 2017) than [he] had prior to arriving here for the entire time of [his] incarceration (since July 2011) in the TDCJ." Dkt. No. 1 at 11. Despite claiming that he received numerous disciplinary actions, Payne identifies only two purportedly "bogus and/or frivolous" disciplinary actions—a disciplinary action he received for allegedly threatening an officer and a disciplinary action for disobeying an order given by a correctional officer. *Id*. at 11–12. As with his alleged retaliatory transfer, Payne fails to state a retaliation claim based on these two disciplinary actions.

First, Payne complains about the disciplinary action he received for allegedly threatening an officer. Payne received major disciplinary case no. 20180266413 for allegedly threatening Officer Gonzales, a Defendant to this action, during a verbal dispute while Payne was waiting to see a medical provider at the Robertson Unit on June 6, 2018. Dkt. No. 1 at 48. A disciplinary panel found Payne guilty of the disciplinary charge. Payne filed a Step-1 and Step-2 Grievance, which he attached to his Complaint. *Id*. at 48–50. Payne's Step-2 Grievance successfully overturned his disciplinary conviction; however,

the disciplinary panel reheard the charge in disciplinary case no. 20180328194 and found Payne guilty of threatening an officer. *Id.* at 56. Payne's attempts to overturn that conviction were unsuccessful. *Id.*

Additionally, Payne alleges that shortly before filing this lawsuit an officer charged him with a disciplinary action for failure to obey an order when Payne failed to heed an officer's instructions to leave the pill window line and report to the dining hall. *Id.* at 12. He alleges that "the officer did this just to be able to assert that he gave me a direct order and I disobeyed it." *Id.* Payne generally asserts that "these covert retaliatory efforts . . . are directly related to [his] pending lawsuits" and his grievances. *Id.*

"To assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them, trials courts must carefully scrutinize these claims." *Woods*, 60 F.3d at 1166. Courts must take a skeptical view of retaliation claims to avoid meddling in every act of discipline imposed by prison officials. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006).

Payne offers nothing more than unsupported allegations and his own subjective conclusions that the disciplinary actions he received were in retaliation for his filing of grievances and federal lawsuits. Through his allegations, Payne essentially asks the Court to accept his claim that the disciplinary charge for threatening an officer was not brought against him because of his conduct or interaction with Gonzales, but merely as retaliation for engaging in activity protected by the First Amendment by filing inmate grievances and lawsuits. Similarly, Payne avers that the discipline he received for failing to obey an order from an officer stemmed from Payne's protected First Amendment activity rather than his

failure to heed an officer's instructions. These conclusory allegations are insufficient to establish a retaliation claim.

Payne has not alleged a chronology of events from which retaliation may plausibly be inferred or that any Defendant harbored a retaliatory motive. *Jones*, 188 F.3d at 325. Moreover, he has not sufficiently alleged that but for his protected First Amendment conduct, i.e., the filing of grievances and lawsuits, his receipt of these disciplinary charges would not have occurred. The Fifth Circuit has held that the mere fact that one incident precedes another is not proof of a causal connection. *Huss v. Gayden*, 571 F.3d 442, 459 (5th Cir. 2009) (noting that "the *post hoc ergo propter hoc* fallacy [after this, therefore because of this] assumes causality from temporal sequence" which is a "false inference"). For these reasons, Payne's retaliation claim regarding disciplinary actions he received is frivolous and fails to state a claim. Thus, this claim must be dismissed with prejudice.

2.  Payne fails to state a claim under the First Amendment's Free Exercise Clause.

In his Complaint, Payne alleges that the Defendants violated  "at certain times, the Religious Land Use and Institutionalized Persons Act which also violated [his] U.S. Constitutional right to freedom of religion." Dkt. No. 1 at 8–9. The Court construes Payne's pleadings to allege a claim under the Free Exercise Clause of the First Amendment.[6]

First Amendment protections of free exercise of religion require the government to refrain from interfering with the religious beliefs and practices of individuals. *See Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005) ("The second, Free Exercise Clause, requires

---

[6] The Court separately examines Payne's RLUIPA claim in Section III.C.2.

government respect for, and noninterference with, the religious beliefs and practices of our Nation's people."). Although incarcerated, an inmate retains his First Amendment right to the free exercise of religion, subject to reasonable restrictions and limitations necessitated by penological goals. *Turner v. Safley*, 482 U.S. 78, 89–91 (1987); *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1999). To fall within the purview of the Free Exercise Clause of the First Amendment, a religious claim must satisfy the following two criteria: "First, the claimant's proffered belief must be sincerely held; the First Amendment does not extend to 'so-called religions which . . . are obviously shams and absurdities and whose members are patently devoid of religious sincerity.'" *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir. 1981) (quoting *Theriault v. Carlson*, 495 F.2d 390, 395 (5th Cir. 1974)). Second, "the claim must be rooted in religious belief, not in 'purely secular' philosophical concerns." *Id.* (citing *Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972)).

To establish a free exercise violation, an inmate must demonstrate that prison officials prevented him from engaging in his religious conduct without any justification related to legitimate penological concerns. *Turner*, 482 U.S. at 89. In reviewing such claims, the Court considers the following factors: (1) whether there is a rational connection between the prison regulation and the claimed penological goal; (2) whether alternative means of exercising the right in question remain open to inmates; (3) the impact of accommodation on guards, other inmates and prison resources in general, and; (4) whether there is an absence of ready alternatives which would evince the reasonableness of a regulation or the existence of reasonable alternatives which would evince the unreasonableness of a regulation. *Id.* at 89–90. In evaluating prison rules that impinge on

religious practices, the Court must accord wide deference to prison officials' decisions in light of the need to preserve internal order and security unless there is substantial evidence to indicate that prison administrators have exaggerated their response to such considerations. *See id.*

Payne's allegations are conclusory. He does not identify any religious belief or religious conduct at issue. He also fails to point the Court in the direction of a single prison regulation that allegedly impinged his ability to exercise his sincerely held religious beliefs. Payne merely advances the unsupported claim that the Defendants' conduct violated "at certain times" RLUIPA which, in turn, violated Payne's rights under the First Amendment. These conclusory allegations fail to state a claim. *Sawyer v. Wright*, 471 F. App'x 260, 261 (5th Cir. 2012) (dismissing free exercise claim for failure to state a claim where plaintiff failed to allege a coherent sequence of facts tending to show his Free Exercise claim was plausible). Therefore, the Court dismisses with prejudice Payne's claim under the First Amendment Free Exercise Clause for failure to state claim on which relief may be granted.

3.   Payne's reference to the Fifth Amendment is frivolous and fails to state a claim.

Payne alleges that his "right to be free from retaliation for using the court system was violated under the . . . Fifth Amendment Due Process Clause of the U.S. Constitution." Dkt. No. 1 at 8. Payne offers no other factual support for this claim. Regardless, Payne's purported Fifth Amendment claim fails as a matter of law.

The Fifth Amendment provides in relevant part: "No person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V. The Fifth Amendment's Due Process Clause applies only to violations of constitutional rights

by the United States or a federal actor. *Blackburn v. City of Marshall*, 42 F.3d 925, 930 n.3 (5th Cir. 1995) ("the due process component of the Fifth Amendment applies only to federal actors"); *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996). Payne exclusively sues state actors—employees of the TDCJ, Texas Governor Abbott, and Texas Attorney General Paxton. He sues no federal actors. Payne is therefore unable to state a viable constitutional violation under the Fifth Amendment and lacks an arguable basis in law.

Accordingly, Payne's Fifth Amendment claim is dismissed with prejudice as frivolous and for failure to state a claim.

### 4. Payne fails to allege sufficient facts to state an Eighth Amendment claim.

Payne alleges that the Defendants' conduct violated his "right to be free from Cruel and Unusual Punishment." Dkt. No. 1 at 9. The Eighth Amendment prohibition against cruel and unusual punishment requires prison officials to provide humane conditions of confinement, including adequate food, shelter, clothing, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

To establish an Eighth Amendment violation, a prisoner must demonstrate a prison official was deliberately indifferent to conditions that resulted in extreme deprivation of the "minimal civilized measure of life's necessities." *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019) (internal quotation marks omitted). To establish deliberate indifference, a prisoner must show that he was subjected to conditions posing a substantial risk of serious harm and that prison officials knew of and disregarded the risk to inmate health or safety. *Farmer*, 511 U.S. at 834. The prison official "must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also

draw that inference." *Id.* at 837. "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001).

Payne does not clearly state the factual basis for his Eighth Amendment claim. He references his anxiety and disagreement with his discharge from the CMI program and transfer to general population at the Robertson Unit. The Supreme Court has held, however, that "to the extent that [prison] conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Put another way, Payne's challenges to his custody level and the perhaps more unpleasant environment of general population does not rise to the level of "unnecessary and wanton" infliction of pain. *See Owens v. Webb*, No. 1:15-CV-173-BL, 2017 WL 1608745, at *2 (N.D. Tex. Apr. 28, 2017) (holding that a prisoner failed to state a claim under the Eighth Amendment when complaining of a change in custody level and recreation restrictions); *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (holding inmate does not have a constitutional right to receive a certain custodial classification). Therefore, Payne's Eighth Amendment claim must be dismissed with prejudice as frivolous and for failure to state a claim on which relief may be granted.

5.   Payne fails to state a claim under the Privileges and Immunities Clause.[7]

Payne asserts a claim under the Privileges and Immunities Clause of Article IV of the United States Constitution. As with all of his other constitutional claims, Payne invokes the Privileges and Immunities Clause on the basis that his "right to be free from retaliation

---

[7] The Court arrives at the same conclusion regardless if Payne asserts his access to courts claim under the First Amendment Petition Clause or the Fourteenth Amendment Due Process Clause. Payne simply fails to state a claim on which relief can be granted.

for using the court system was violated[.]" Dkt. No. 1 at 8. Therefore, the Court liberally construes this allegation to be a claim that the Defendants violated Payne's right of access to the courts as recognized by the Privileges and Immunities Clause.

The Privileges and Immunities Clause states that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2, cl. 1. The Fifth Circuit has recognized a right of access to the courts, which is founded in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, and the Fourteenth Amendment Due Process Clause of the Constitution. *Waller v. Hanlon*, 922 F.3d 590, 601 (5th Cir. 2019) (citing *Ryland v. Shapiro*, 708 F.2d 967, 971–73 (5th Cir. 1983)). Denial-of-access claims take one of two forms: forward-looking claims alleging "that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time," and backward-looking claims alleging that an official action has "caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some particular order of relief." *Id.* (citing *Christopher v. Harbury*, 536 U.S. 403, 413–14 (2002)).

Under a forward-looking claim, the remedy sought is to enjoin the "official action [that] is presently denying an opportunity to litigate . . . ." *Christopher*, 536 U.S. at 413. "[T]he justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *United States v. McRae*, 702 F.3d 806, 830 (5th Cir. 2012). "To maintain a backward-looking claim, a plaintiff must identify (1) a nonfrivolous underlying claim; (2) an official act that frustrated the litigation of that claim; and (3) a remedy that is not otherwise available in another suit

that may yet be brought." *Waller*, 922 U.S. at 602 (quoting *McRae*, 702 F.3d at 830–31). Importantly, "[i]t follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher*, 536 U.S. at 415.

It is unclear on what basis Payne invokes the Privileges and Immunities Clause of the United States Constitution or whether he seeks to assert a forward-looking or backward-looking access to courts claim. Either way, Payne simply pleads no facts to support a claim for denial of access to the courts. The extent of Payne's reliance on the Privilege and Immunities Clause consists of a single reference to this constitutional provision on one page of his 200-page Complaint. *See* Dkt. No. 1 at 8. Payne does not allege whether he was, in fact, denied an opportunity to litigate his claims (required to sustain a forward-looking claim) nor does he identify any non-frivolous claim that the Defendants prevented him from pursuing (necessary to sustain a backward-looking claim).

Therefore, Payne's claim under the Privileges and Immunities Clause must be dismissed with prejudice for failure to state a claim.

6.  Payne fails to state an Equal Protection claim under the Fourteenth Amendment.

Payne alleges that his "right to be free from retaliation for using the court system was violated under the . . . Fourteenth Amendment Equal Protection [] Clause[] of the U.S. Constitution." Dkt. No. 1 at 8. "The Equal Protection Clause directs that persons similarly situated should be treated alike." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To state an equal protection claim,

> a § 1983 plaintiff must allege that (a) "a state actor intentionally discriminated against [him] because of membership in a protected class [,]" *Williams*, 180 F.3d at 705 (citation omitted), or (b) he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. Of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

*Gibson v. Tex. Dep't of Ins.–Div. of Workers' Comp.*, 700 F.3d 227, 238 (5th Cir. 2012) (internal citation modified).

"'Discriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group.'" *McAlister v. Livingston*, 348 F. App'x 923, 937 (5th Cir. 2009) (quoting *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995) (per curiam)). Absent an allegation of improper motive, the "mere claim of inconsistent outcomes in particular . . . individual instances furnishes no basis for relief." *Thompson v. Patteson*, 985 F.2d 202, 207 (5th Cir. 1993). Here, Payne's conclusory allegation fails to state an equal protection claim.

Payne has not alleged any suspect class of which he is a member. *See Cato v. Watson*, 212 F. App'x 258, 260 (5th Cir. 2006) (per curiam) (affirming dismissal of an equal protection claim where the plaintiff failed to either "identify any suspect class of which he is a member" or "challenge the district court's determination that he must show that he was discriminated against based on a suspect classification in order to establish an equal protection violation" (citing *Williams*, 180 F.3d at 705)). Nor does Payne allege that "*he* was subjected to discriminatory treatment in the sense of being treated differently because of some personal or class characteristic such as race or religion, or because of any other improper motive." *Thompson*, 985 F.2d at 207 (emphasis in original). Payne simply

alleges that the Defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment. This threadbare allegation, without more, is insufficient to state an equal protection claim.

Because Payne has not demonstrated that he was denied equal protection of the laws, he fails to state a claim on which relief can be granted. *Taylor v. Johnson*, 257 F.3d 470, 474 (5th Cir. 2001) (dismissing civil rights complaint because inmate did not allege any facts demonstrating prison officials "purposefully intended to discriminate against him as a member of an identifiable group"); *Woods*, 51 F.3d at 580 (denying prisoner's equal protection claim because he failed to offer proof of discriminatory intent or a specific act of discrimination). Therefore, the Court dismisses Payne's claim under the Fourteenth Amendment Equal Protection Clause with prejudice for failure to state a claim on which relief can be granted.

> 7.  Payne fails to state a Due Process claim under the Fourteenth Amendment.

Lastly, regarding Payne's claim under the Due Process Clause of the Fourteenth Amendment, he simply repeats his conclusory allegation that the Defendants retaliated against him for using the court system. Dkt. No. 1 at 8. Payne fails to allege any facts to support his Fourteenth Amendment Due Process claim.

To the extent Payne seeks to bring a Fourteenth Amendment Due Process Clause claim alongside his retaliation claim, the Court has already found that Payne's retaliation claim lacks an arguable basis in law and fails to state a claim. *See supra*, III.B.1. Such a claim under the Fourteenth Amendment fails for the same reasons. If Payne seeks to characterize this claim as an access-to-courts claim, such a claim is redundant and

dismissed for the same reasons explained in the Court's analysis of Payne's claim under the Article IV Privileges and Immunities Clause. *See supra* Section III.B.5. Accordingly, Payne's Fourteenth Amendment Due Process claim is derivative and must be dismissed with prejudice as frivolous and/or for failure to state a claim.

C. Payne fails to allege sufficient facts to support an ADA, RA, or RLUIPA claim.

Payne alleges violations of his federally protected rights under the ADA, RA, and RLUIPA. But here, as with many of his constitutional claims, Payne alleges no facts to support his claims that the Defendants violated his federal statutory rights.

1. ADA and RA Claims

"The ADA 'forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodation (Title III).'" *Jefferson v. Loftin*, No. 3:04-CV-1102, 2005 WL 4541891, at *6 (N.D. Tex. Mar. 16, 2005) (accepting recommendation of Mag. J.) (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001)). In pertinent part, Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, as codified in 29 U.S.C. § 794(a), Section 504 of the RA provides in pertinent part that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, or be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

In general, Title II "tracks the language of Section 504" and, by enacting Title II, Congress intended to "extend the protections of the Rehabilitation Act to cover all programs of state or local governments, regardless of the receipt of federal financial assistance and that it work in the same manner as Section 504." *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000) (citation and internal quotation marks omitted). Furthermore, "[j]urisprudence interpreting either section is applicable to both." *Id.*

"Title II of the ADA unambiguously extends to state prison inmates." *See Pa. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 213 (1998). And while coverage under the RA is limited by the requirement of federal financial assistance, the two provisions are essentially coextensive. Nevertheless, neither provision provides for relief against any individual. *See Coker v. Dallas Cnty. Jail*, No. 3:05-CV-005-M-BH, 2009 WL 1953038, at * 16 n.11 (N.D. Tex. Feb. 25, 2009) (recommendation of Mag. J. citing 42 U.S.C. § 12131), *accepted as modified by* 2009 WL 1953037 (N.D. Tex. July 6, 2009); *Meredith v. Nowak*, No. 06-2384, 2008 WL 4808905, at *4 (E.D. La. Oct. 31, 2008). These provisions only "provide for relief against public entities." *Coker*, 2009 WL 1953038, at *16 n.11. Because Payne does not sue any entity, his ADA and RA claims are legally frivolous. Furthermore, to state a claim under either Title II or Section 504, Payne must allege that he "(1) was a qualified individual with a disability, and (2) was excluded from participation in or denied the benefits of the services, programs, or activities of the [prison], or was otherwise subjected to discrimination, (3) because of his disability." *Wright v. Tex. Dep't of Crim. J.*, No. 7:13-CV-0116-O, 2013 WL 6578994, at *2 (N.D. Tex. Dec. 16, 2013).

Payne presents no facts to establish he is a qualified individual with a disability. Nor does he allege that he was excluded from or denied benefits of any service, program, or activity, or that he was subjected to discrimination because of his disability. Therefore, Payne's claims arising under the ADA and RA must be dismissed with prejudice as frivolous and for failure to state a claim on which relief may be granted.[8]

2.   RLUIPA Claim

Payne claims that the Defendants violated "at certain times, the Religious Land Use and Institutionalized Persons Act." Dkt. No. 1 at 8–9. As with Payne's claim under the First Amendment Free Exercise Clause, he fails to state a claim.

The RLUIPA mandates that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a). The RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A). A government regulation substantially burdens a "religious exercise" for the purposes of the RLUIPA if it "truly pressures the adherent to significantly modify his religious behavior and significantly violate his beliefs." *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004). The Fifth Circuit has found that the RLUIPA

---

[8] Even if the Court assumes that Payne's mental illness establishes him as a qualified individual with a disability, Payne has still not alleged that he was excluded from or denied benefits of any service, program, or activity because of that disability.

does not permit suits against Defendants in their individual capacities. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 329 (5th Cir. 2009).

Payne's allegations wholly fail to demonstrate that he has been prevented from exercising his religious beliefs or that he has been substantially burdened in exercising his religion. Payne alleges no government regulation infringing his right to free exercise of religion. He therefore fails to state a claim under RLUIPA. *See Garrett v. Stephens*, 675 F. App'x 444, 446 (5th Cir. 2017) (finding that plaintiff "has failed to state a claim under RLUIPA because he has not alleged a government regulation or policy infringing his right to free exercise of religion." (citing *Adkins v. Kaspar*, 393 at 567). Therefore, Payne's claim under RLUIPA must be dismissed with prejudice for failure to state a claim on which relief may be granted.

## IV. LEAVE TO AMEND

In general, courts should provide pro se litigants an opportunity to amend before dismissing a complaint. *See Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009). Leave to amend is not required, however, when plaintiffs have already pled their "best case." *Id.* Whether to grant leave to amend is within the Court's sound discretion. *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). Payne has been provided several opportunities to factually support his claims through filing a comprehensive complaint and his answers to the Magistrate Judge's Questionnaire. Payne either could not or would not properly respond to either order. Rather, Payne has continued filing piecemeal allegations without leave of Court in an effort to supplement his

Complaint. Based on these prior opportunities to support his claims, the Court finds that Payne has pleaded his best case and that there is no basis to permit any further amendment.

## V.   CONCLUSION

For the above reasons, Payne's Complaint, and all claims alleged therein, are DISMISSED with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii) and 1915A(b)(1) as frivolous and/or for failure to state a claim on which relief may be granted. To the extent that Payne's May 4, 2019 letter moves for the appointment of counsel, such a motion is DENIED as moot because this Order dismisses Payne's claims with prejudice.

This is a consent case assigned to the undersigned United States magistrate judge under 28 U.S.C. § 636(c) with authority to enter judgment. Any appeal shall be to the Court of Appeals for the Fifth Circuit under 28 U.S.C. § 636(c)(3). This dismissal shall count as a qualifying dismissal under 28 U.S.C. § 1915, and shall constitute a "strike" for purposes of the Prisoner Litigation Reform Act's three-strikes bar to proceeding *in forma pauperis*. *See In re Jacobs*, 213 F.3d 289 (5th Cir. 2000).

Dismissal of these claims does not release Payne from the obligation to pay any filing fee previously imposed. 28 U.S.C. § 1915(b)(1); *see also Williams v. Roberts*, 116 F.3d 1126, 1128 (5th Cir. 1997).

Judgment shall be entered accordingly.

ORDERED this 3rd day of August, 2021.

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE